IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD H. AGUILAR,

    Plaintiff,

v.

NEW UNITED MOTOR MANUFACTURING, INC. DISABILITY INSURANCE INCOME PLAN,

    Defendant.
_____/

NO. C 03-04387 WWS

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.     INTRODUCTION**

    Plaintiff Richard H. Aguilar brings this action, arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, against Defendant New United Motor Manufacturing, Inc. Disability Insurance Income Plan ("the Plan"), challenging the denial of his claim for short-term and long-term disability benefits that he alleges are due to him under the terms of the Plan.

    A pretrial conference was held on October 25, 2004, at which the Court (White, J.) appropriately determined – and the parties conceded – that Plaintiff's claim would be reviewed de novo because the Plan contains no language delegating authority to the Plan Administrator to interpret the terms of the Plan. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).  The Court

1   additionally held that it would not exercise its discretion to admit evidence outside of the
2   administrative record in its evaluation of the Plan Administrator's decision. *See id.* at 1090-91.
3       The parties submitted trial briefs and proposed findings of fact and conclusions of law,
4   and made arguments at a bench trial hearing on February 4, 2005. The case was reassigned to
5   the undersigned on June 27, 2005.
6       The Court, having reviewed the administrative record, the hearing transcripts, and the
7   papers submitted by the parties, now finds for Defendant and against Plaintiff.

## II. JURISDICTION

The action arises under ERISA, 29 U.S.C. § 1132, and this Court has jurisdiction over Plaintiff's claim pursuant to 29 U.S.C. § 1132(e).

## III. FINDINGS OF FACT

The following facts are taken from the administrative record ("PLAN") submitted by the parties, which contains the only relevant and admissible evidence in the trial of this matter. *See Kearney*, 175 F.3d at 1090-91.

Plaintiff was employed by New United Motor Manufacturing, Inc. ("NUMMI") from February 1985 to December 2000, as a production line inspector. PLAN 0284-85. As an employee of NUMMI, Plaintiff was a participant in NUMMI's employee welfare benefit Plan, which was funded through the purchase of a group insurance policy issued by the Life Insurance Company of North America ("LINA"). PLAN 0001-32.

    *A.    The NUMMI Disability Income Insurance Plan*

The Plan provides for disability benefits if, because of injury or sickness, an employee is unable to perform all the material duties of any occupation available at the Plant for which he is or may reasonably become qualified based on his education, training or experience. PLAN 0005, 0309.

Under the Plan, short-term disability benefits are payable for a maximum of 52 weeks after a seven-day benefit waiting period during which the participant must be continuously and totally disabled. PLAN 0027. Long-term disability benefits are payable after 52 weeks of continuous disability. PLAN 0009. If a participant is 50 or older when the disability began,

2

1  long-term benefits are payable until the earlier of (a) the participant's sixty-fifth birthday or (b)
2  the date the participant ceased to be disabled. PLAN 0015.
3        The Plan agrees to pay benefits for "Eligible Employees," which include: 1) all active
4  full-time hourly employees of NUMMI working a minimum of 40 hours per week and 2) all
5  active full-time salaried employees of NUMMI working a minimum of 40 hours per week.
6  PLAN 0290.
7        The Plan provides for the termination of insurance on the date that an employee's
8  "Active Service" ends. PLAN 0295. An employee is considered to be in Active Service under
9  the terms of the Plan on a scheduled work day if: 1) the employee is "performing in the usual
10 way all of the regular duties" of work for the employer on a full time basis that day, or 2) the
11 day is a scheduled holiday, vacation day or period of employer-approved paid leave of absence.
12 PLAN 0305. The Plan provides that if an employee is not in Active Service on the date the
13 coverage would otherwise become effective, it will become effective on the date the employee
14 returns to Active Service. PLAN 0295. The Plan states that if Active Service ends due to
15 disability for which benefits are or may become payable, an employee's insurance will continue
16 as long as the benefits are payable for the disability. PLAN 0295.

      B.    *Plaintiff's Claim for Disability Benefits*

18       Plaintiff's last day of work at NUMMI was December 1, 2000, PLAN 0285-86, and it is
19 undisputed that Plaintiff was an eligible Plan participant on that date. The record provides no
20 reason given by Plaintiff or noted by NUMMI on or around December 1, 2000, why Plaintiff did
21 not return to work.[1] *See* Hearing Transcript at 17, lines 13-25.
22       On January 22, 2002, Plaintiff initiated a claim for disability benefits by telephone to
23 LINA. PLAN 0281-91. This telephone call was followed by an integrated application for short-
24 term and long-term benefits on or about February 12, 2002. PLAN 0199-0200.
25       On January 23, 2002, in response to Plaintiff's claim, LINA sent a request for Plaintiff's
26 medical records to Vasdeep Kahlon, M.D., a psychiatrist identified by Plaintiff as his treating

---

[1] There is no evidence to indicate that Plaintiff's time off after December 1, 2000, was due to holiday, vacation or employer-approved paid leave. *See* PLAN 0305.

3

physician. PLAN 0274-76. By letter dated March 15, 2002, LINA advised Plaintiff that it had not received any medical records from Dr. Kahlon and requested Plaintiff's assistance in obtaining such records. PLAN 0273. LINA also notified Plaintiff that if no medical information was received by April 28, 2002, a decision on his claim for benefits would be made based on the information in his administrative record. PLAN 0273.

By letter dated March 28, 2002, LINA advised Plaintiff that it was still awaiting medical records and information from Dr. Kahlon and again told Plaintiff that it would make a decision based on the available information on April 28, 2002. PLAN 0271.

By letter dated April 29, 2002, LINA denied Plaintiff's short-term disability benefit claim because it had not received any records from Plaintiff or Plaintiff's medical providers upon which to base an evaluation of Plaintiff's claim. PLAN 0265-67. In this letter, LINA noted that it had requested, unsuccessfully, records from Dr. Kahlon on February 6 and 21, and March 7, 2002. PLAN 0265-67.

On April 29, 2002, LINA received an Attending Physician's Statement from James Rennert, M.D., dated April 29, 2002, wherein Dr. Rennert stated that Plaintiff suffered from major depressive disorder and panic disorder and that he was disabled from working. PLAN 0268-70. Dr. Rennert stated that Plaintiff had been disabled since December 1, 2000. PLAN 0268-70. LINA subsequently received an Attending Physician's Statement from Dr. Kahlon, dated May 20, 2002, wherein Dr. Kahlon diagnosed Plaintiff with major depression and panic disorder. PLAN 0260. Dr. Kahlon noted that he treated Plaintiff from December 1, 2000 to January 15, 2002, after which time Plaintiff transferred exclusively to Kaiser and Dr. Rennert for further treatment.[2] PLAN 0260. Dr. Kahlon stated that Plaintiff was currently under the care of Dr. Rennert and that Plaintiff was still on disability, but he did not specify when Plaintiff became disabled. PLAN 0260.

Plaintiff appealed LINA's denial of benefits by letter dated July 16, 2002. PLAN 0259. By letter dated July 26, 2002, LINA advised Plaintiff that a decision to overturn its prior denial

---

[2] Plaintiff was being treated by both Dr. Kahlon and Dr. Rennert for a certain period of time, but did not begin seeing Dr. Rennert until January 29, 2001. PLAN 0081, 0083.

4

1  could not be made based upon the statements in the Attending Physician's Reports alone.
2  PLAN 0255.

3      By letter dated August 19, 2002, LINA affirmed its denial of Plaintiff's claim, noting
4  that Plaintiff had failed to submit any additional medical evidence in support of his claim and
5  that Plaintiff had failed to submit a signed authorization to LINA so that LINA could obtain
6  further medical information on its own. PLAN 0253. LINA subsequently obtained Plaintiff's
7  signed authorization and agreed to re-review Plaintiff's claim. PLAN 0170.

8      By letter dated November 1, 2002, LINA notified Plaintiff that he had failed to
9  demonstrate that he was totally disabled as of December 1, 2000, but stated that it would request
10 records from Dr. Kahlon. PLAN 0195. LINA received Dr. Kahlon's records on December 18,
11 2002. PLAN 0176-87. Dr. Kahlon's records showed that Dr. Kahlon evaluated Plaintiff on
12 December 1, 2000, and filled out a mental evaluation form on that date. PLAN 0178-81. Dr.
13 Kahlon noted that Plaintiff was irritable, restless, and hypoactive, but in the section entitled
14 "Liabilities and Special Needs," Dr. Kahlon marked only that Plaintiff had "poor coping skills."
15 PLAN 0181. At the end of the form, Dr. Kahlon prescribed the antidepressant Paxil for
16 Plaintiff, but nowhere indicated that Plaintiff was disabled and/or unable to perform any work at
17 the NUMMI Plant. PLAN 0178-81.

18     By letter dated January 6, 2003, LINA reconfirmed its denial of Plaintiff's claim for
19 benefits because the medical records failed to establish that Plaintiff was totally disabled as of
20 December 1, 2000. PLAN 0150-53.

21     LINA received a letter, dated March 12, 2003, from Dr. Rennert, challenging the denial
22 of Plaintiff's claim for benefits and stating that Plaintiff's treatment at Kaiser indicates that he
23 had a "difficult treatment-resistant case of Panic Disorder and Depression." PLAN 0143. LINA
24 also received a letter, dated March 12, 2003, from Dr. Diane Enos, a psychologist, who first
25 treated Plaintiff on February 11, 2002, and who stated that Plaintiff's condition made him
26 unable to return to work. PLAN 0145-46.

27     On April 14, 2003, LINA received a third appeal from Plaintiff. PLAN 0142. By letter
28 dated April 21, 2003, LINA reconfirmed its denial of Plaintiff's claim, noting that the reports

5

1  from Dr. Rennert and Dr. Enos, relating to treatment provided after February 11, 2002, did not
2  show that Plaintiff was disabled as of December 1, 2000. PLAN 0140-41. LINA also notified
3  Plaintiff that he had exhausted all administrative levels of appeal. PLAN 0140-41.

4  By letter dated April 29, 2003, Plaintiff objected to LINA's April 21, 2003, denial and
5  requested a copy of his claim file. PLAN 0113-14. With this letter, Plaintiff sent LINA
6  additional records, including copies of "disability slips" from Drs. Kahlon and Rennert that
7  advise medical leave for Plaintiff. PLAN 0116-0139. The records indicate that although Dr.
8  Kahlon was treating Plaintiff as of December 1, 2000, the first disability slip available shows
9  that Dr. Kahlon did not put Plaintiff on medical leave until December 20, 2000. PLAN 0116-
10 35. The records also indicate that Dr. Rennert certified that Plaintiff was disabled as of
11 December 1, 2000, even though Dr. Rennert's first evaluation of Plaintiff did not occur until
12 January 29, 2001. PLAN 0083.

13 LINA did not treat Plaintiff's April 29, 2003 letter as an appeal because Plaintiff had
14 been previously notified that he had exhausted all appeals. PLAN 0140-41. By letter dated May
15 27, 2003, LINA sent Plaintiff a copy of his file. PLAN 0112.

16 This litigation ensued.

### III.     CONCLUSIONS OF LAW

18 Plaintiff bore the burden of providing evidence to LINA showing that he is entitled to
19 disability benefits under the Plan. *See Kearney,* 175 F.3d at 1091 (stating that if claimant
20 believed particular medical data should have been reviewed by the Plan administrator, the
21 claimant "should have sent it to [the administrator]"); *Chamberlain v. Allstate Ins. Co.,* 931
22 F.2d 1361, 1364 (9th Cir. 1991) (holding that under California law, "[a]n insured bears the
23 burden of proving that a claim falls within the scope of the policy"); *Jordan v. Northrop,* 63 F.
24 Supp. 2d 1145, 1150 n.2 (C.D. Cal. 1999) (stating that in determining a claim for disability
25 benefits under ERISA, "it is not the duty of the administrator to seek out evidence which is not
26 before them") *aff'd*, 370 F.3d 869 (9th Cir. 2004); PLAN 0313 (requiring plaintiff to submit
27 proof of loss in order to receive benefits).

28

The medical records provided by Drs. Kahlon, Rennert, and Enos support Plaintiff's argument that he is or was disabled and unable to work at some point in time. However, under the terms of the Plan, Plaintiff must establish that he was totally disabled as of December 4, 2000,[3] because Plaintiff's coverage under the Plan terminated on December 4, 2000, when he ceased to be in "Active Service." PLAN 0295. The Plan provides for the continuation of insurance if Active Service ceases due to a "Disability for which Monthly Benefits are or may become payable." PLAN 0295. This means, again, that Plaintiff must establish that he was disabled and unable to perform the duties of any occupation available at the Plant as of December 4, 2000. PLAN 0309. Plaintiff has failed to present evidence to prove disability as of that date.

The only record evidence reflecting Plaintiff's claim that he was disabled as of December 4, 2000, is: 1) a "Visit Verification/Family Leave" form filled out by Dr. Rennert on February 13, 2002, stating that Plaintiff is disabled and unable to work, and has been so disabled since December 1, 2000, PLAN 0136; and 2) an Attending Physician Statement filled out by Dr. Rennert on April 29, 2003, again commenting that Plaintiff has been disabled since December 1, 2000. PLAN 0270. Dr. Rennert does not provide any support for his finding that Plaintiff was disabled as of December 1, 2000, however, and the record indicates that Dr. Rennert first evaluated Plaintiff on January 29, 2001, at the earliest. PLAN 0083, 0136.

The most relevant medical records with regard to the date of Plaintiff's disability are those of Dr. Kahlon, who evaluated Plaintiff on December 1, 2000. PLAN 0178-81. During this evaluation, Dr. Kahlon noted that Plaintiff had poor eye contact and was irritable, hypoactive, restless, depressed, and anxious. PLAN 0180-81. Dr. Kahlon's assessment was

---

[3] Both parties agree that Plaintiff's last day of work was Friday, December 1, 2000. PLAN 0285-86. The Plan provides that an employee is deemed to be in "Active Service" on the day which is one of the employer's scheduled work days if the employee is performing in the usual way all of the regular duties of employment on a full time basis that day. PLAN 0305. If the day is not a scheduled work day, the employee is deemed to be in Active Service if the employee was in Active Service on the preceding scheduled work day. PLAN 0305. The Court is unaware of any record evidence establishing that Saturday and Sunday, December 2 and 3, 2000, were scheduled work days for Plaintiff. Because Plaintiff cannot show disability as of December 1 or December 4, 2000, the precise date that Active Service ceased is irrelevant. The Court will use December 4, 2000, because Active Service ceased, at the latest, on that date when Plaintiff failed to return to work. *See* PLAN 0305.

7

that Plaintiff has "poor coping skills" and that Plaintiff should be treated with the antidepressant Paxil. PLAN 0180-81. However, Dr. Kahlon nowhere noted on any of the relevant forms that Plaintiff was disabled or that he was unable to perform his duties at NUMMI. PLAN 0178-81. Moreover, the disability slips that Plaintiff submitted to LINA – after LINA had already denied his third appeal – show that the first date for which Dr. Kahlon advised medical leave for Plaintiff was December 20, 2000. PLAN 0116.

Therefore, although the record presents what may be viewed as conflicting evidence on the issue of Plaintiff's date of disability, the Court is charged with evaluating the persuasiveness of conflicting evidence and deciding which is more likely true. *See Kearney*, 175 F.3d at 1095. Although Dr. Rennert stated that Plaintiff was disabled as of December 1, 2000, the Court must evaluate the credibility of Dr. Rennert's statement by looking at the basis upon which Dr. Rennert rendered his conclusion. *See id.* It is undisputed that Dr. Rennert did not evaluate Plaintiff on December 1, 2000. The first evaluation by Dr. Rennert appears to have been on January 29, 2001. PLAN 0083. Therefore, Dr. Rennert had no personal knowledge of Plaintiff's condition on December 1, 2000, and provides no other basis for reaching his conclusion regarding Plaintiff's date of disability. PLAN 0083. Plaintiff argues that a doctor may make a diagnosis without having observed a disability on a particular day, and that Dr. Rennert looked at Dr. Kahlon's notes from the December 1, 2000, evaluation and was able to reach a conclusion even though Dr. Kahlon made no comment regarding disability. Hearing Transcript at 6, lines 16-21. However, the fact that Dr. Rennert first evaluated Plaintiff two months after the alleged onset of the disability – coupled with the fact that Dr. Rennert's report was sent to LINA only after Plaintiff's claim for benefits had already been denied – weakens the credibility of Dr. Rennert's conclusion regarding the onset date of disability.

The treating physician who saw Plaintiff on December 1, 2000, Dr. Kahlon, gave no indication that Plaintiff was disabled and unable to work as of that date, PLAN 0178-81, and first advised Plaintiff to take medical leave from work on December 20, 2000. PLAN 0116. Therefore, the earliest date that Plaintiff can show evidence of disability under the Plan is December 20, 2000.

8

Plaintiff ended Active Service, as defined under the Plan, on December 4, 2000, at the latest, because on that scheduled day of work, Plaintiff was not "performing in the usual way all of the regular duties" of his work.[4]  PLAN 0295, 0305.  Insurance therefore terminated as of December 4, 2000, unless Plaintiff returned to work – which he never did – or unless Plaintiff proved that his Active Service ended due to an eligible disability, which he has not.  PLAN 0295.

Because short-term and long-term disability benefits require Plaintiff to have shown disability at the time he ceased Active Service and during the relevant waiting periods, PLAN 0292, 0295, Plaintiff has not shown that he is entitled to such benefits.

## IV.  CONCLUSION

A review of the administrative record indicates that Plaintiff has failed to establish that he was disabled as of the date required in order to receive short-term and long-term disability benefits.  The denial of his claim for disability benefits was therefore appropriate.  For the reasons set forth above, the Court finds for Defendant and against Plaintiff.

**IT IS SO ORDERED.**

Dated:  August 29, 2005

WILLIAM W SCHWARZER
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] Again, the record does not show that Plaintiff was on holiday, vacation, or employer-approved paid leave, thus enabling him to remain in Active Service.  PLAN 0305.